

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-12-00565-CR**
**NO. 02-12-00566-CR**
**NO. 02-12-00567-CR**
**NO. 02-12-00568-CR**

CEDRIC LAMIER HIGGS                                              APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two issues, appellant Cedric Lamier Higgs appeals his concurrent sentences of twenty-five years' confinement for four counts of aggravated robbery with a deadly weapon.[2] We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). The trial court's

**Background Facts**

In November 2011, while appellant was at an Arlington gas station, he requested a ride from cab driver Elijah Nyagesiba. When Nyagesiba reached appellant's destination, Nyagesiba asked appellant to pay the cab fare. Appellant responded by putting a gun to Nyagesiba's head and telling Nyagesiba to take everything out of his own pockets and surrender those items to appellant. At one point, appellant told Nyagesiba that if Nyagesiba did not give his car keys to appellant, appellant would shoot him. After Nyagesiba gave appellant the keys, cash, and a wallet, Nyagesiba ran away from the cab.

Nyagesiba had never seen a gun in person before that day and was under the impression appellant would shoot him if he did not comply. At no point did Nyagesiba see the gun go off, nor was he sure if the gun was functional. Nyagesiba, who never drove a cab again after that day, testified that he still has nightmares stemming from the incident.

One early morning in December 2011, appellant called cab driver Talib Mahmood to pick him up at an Arlington restaurant. Appellant directed Mahmood to drop him off at an apartment complex in Arlington. Once Mahmood stopped the cab, appellant placed a gun to Mahmood's head and told Mahmood he would kill him if Mahmood did not give appellant money. Mahmood surrendered his phone, his GPS device, and $320 cash. Later, Mahmood testified that he was

certifications of appellant's right to appeal state that these are plea-bargain cases but that appellant has a limited right to appeal his sentences.

scared and shocked while appellant was robbing him; he expressed his belief that appellant would have killed him had he not complied with appellant's demands.

A grand jury indicted appellant with four counts of aggravated robbery with a deadly weapon.[3] Appellant received appointed counsel. In September 2012, in the course of receiving admonishments, judicially confessing, and waiving constitutional and statutory rights, he agreed to plead guilty to each aggravated robbery charge in exchange for the dismissal of three other charges that were pending against him. The trial court accepted the pleas and ordered the preparation of a presentence investigation report. Soon thereafter, appellant filed several motions, including a motion for the appointment of an investigator. The clerk's record does not contain rulings on any of appellant's motions.

Based on appellant's pleas, the trial court convicted him of four counts of aggravated robbery. After hearing evidence related to appellant's punishment, including testimony from his parents, the court assessed concurrent twenty-five year sentences. Appellant brought these appeals.

### The Forfeiture of Appellant's First Issue

In his first issue, appellant contends that the trial court erred by failing to grant his motion for the appointment of an investigator.[4] One day after appellant

---

[3]The State called only Nyagesiba and Mahmood to testify; the record does not establish how appellant committed the other aggravated robberies.

[4]The title of appellant's first issue asks whether the trial court erred by

3

pled guilty, he filed several pretrial motions, including the motion for the appointment of an investigator. In that two-page motion, appellant listed his pending charges, alleged that witnesses connected to those charges could be properly interviewed only through the use of an investigator, and stated that appointment of an investigator was "necessary to insure that [appellant] receive[d] his rights to effective assistance of counsel, cross-examination and confrontation, and compulsory process . . . guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, [§] 10 of the Texas Constitution." Similarly, in his brief on appeal, appellant relies on the Sixth Amendment and the Fourteenth Amendment to contend that the trial court reversibly erred by not appointing an investigator.

To preserve a complaint for appellate review, the record must reflect that the complaint was made to the trial court and either that the trial court ruled on it, expressly or implicitly, or that the appellant objected to the court's refusal to do so. Tex. R. App. P. 33.1(a); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Gutierrez v. State*, 36 S.W.3d 509, 510–11 (Tex. Crim. App. 2001). Actions or statements of a trial court have been held to constitute an implicit ruling when they "unquestionably" indicate a ruling. *Dahlem v. State*, 322 S.W.3d 685, 691 (Tex. App.—Fort Worth 2010, pet. ref'd); *see Montanez v. State*, 195

failing to appoint an investigator. Although appellant states in other parts of his brief that the trial court erred by failing to appoint an expert, we construe the totality of the brief to complain about the lack of the appointment of an investigator.

4

S.W.3d 101, 104–05 (Tex. Crim. App. 2006) (holding that a trial court implicitly ruled on a motion to suppress when the record revealed that the trial court took the motion under advisement, a docket sheet stated that an appeal had been "preserved as to issues presented," and the notice of appeal contained the trial court's certification of the defendant's right to appeal matters raised by motion and ruled on prior to trial).

We do not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g); *Clay v. State*, 361 S.W.3d 762, 765 (Tex. App.—Fort Worth 2012, no pet.). Preservation of error is a systemic requirement. *Wilson*, 311 S.W.3d at 473–74; *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009). Except for complaints involving systemic requirements or involving rights that are waivable only, all complaints, "whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Mendez v State*, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).

Nothing in the record indicates that the trial court ruled, either explicitly or implicitly, on appellant's motion for the appointment of an investigator or even that the trial court was aware that the motion had been filed. Appellant has not directed us to any authority establishing that entitlement to a court-appointed investigator is a systemic or waivable-only right, and we have found none. Thus, because the record establishes that appellant merely filed a motion to appoint an investigator, did not bring the trial court's attention to the motion, and did not

5

obtain an express or implied ruling on the motion, we hold that appellant forfeited this complaint and overrule his first issue. *See* Tex. R. App. P. 33.1; *Mendez*, 138 S.W.3d at 342; *see also Estrada v. State*, 313 S.W.3d 274, 316 (Tex. Crim. App. 2010) (holding that a defendant forfeited an issue because although the defendant filed a motion, the record did not show that the defendant brought the motion to the trial court's attention or obtained a ruling on it), *cert. denied*, 131 S. Ct. 905 (2011); *Llamas v. State*, 270 S.W.3d 274, 277 (Tex. App.—Amarillo 2008, no pet.) ("We can find no support in the record for the proposition that the motion to dismiss appointed counsel was ever brought to the trial court's attention. . . . As such, the same has not been preserved for appeal."); *Guevara v. State*, 985 S.W.2d 590, 591–93 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (holding that when a defendant filed a motion that raised a constitutional matter but never presented the motion to the trial court, the issue was forfeited for appellate review).

**The Admission of Lay Opinion Testimony**

In his second issue, appellant contends that the trial court abused its discretion by overruling his objection to Nyagesiba's allegedly speculative testimony. During the State's direct examination of Nyagesiba in appellant's sentencing hearing, the following colloquy occurred:

> [THE STATE:] When he pulled out that gun, *what were you thinking? What did you think was about to happen?*
>
> A. It was -- it was -- it was -- it was shooting.

6

THE REPORTER: I'm sorry?

THE WITNESS: He was shooting. He wanted to shoot me.

[DEFENSE COUNSEL]: Objection; speculative.

[THE STATE:] . . . *Did you believe that he was going to shoot you?*

THE COURT: Just a moment.

THE WITNESS: Yes.

THE COURT: Overruled. You may proceed.

[THE STATE]: I'm sorry.

Q. . . . *You believed* he was going to shoot you?

A. He was going to shoot me. [Emphasis added.]

On appeal, appellant appears to contend that Nyagesiba's testimony violated rules of evidence 602 and 701; he asserts, like he did in the trial court, that Nyagesiba's testimony was "speculative." *See* Tex. R. Evid. 602 (requiring a witness to have personal knowledge of the matters that the witness testifies about), 701 (stating that lay opinion testimony is admissible only as to "opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue"); *see also Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997) ("The perception requirement of Rule 701 is consistent with the personal knowledge requirement of Rule 602.").

Under rule 701, the requirement that a witness's opinion be rationally based on the perception of the witness is composed of two parts: the witness

7

must be able to establish personal knowledge of the events from which his opinion is drawn, and the opinion must be rationally based on that knowledge. *Fairow*, 943 S.W.2d at 898. It is within the trial court's discretion whether a witness's opinion meets the requirements of rule 701; we overturn the trial court's ruling only if there was an abuse of discretion. *Id.* at 901; *see also Sandone v. State*, 394 S.W.3d 788, 791 (Tex. App.—Fort Worth 2013, no pet.) ("We review a trial court's decision to admit evidence under an abuse of discretion standard.").

"An opinion will satisfy the personal knowledge requirement if it is an interpretation of the witness's objective perception of events (i.e. *his own senses or experience*)." *Fairow*, 943 S.W.2d at 899 (emphasis added). In other words, "while a witness cannot possess personal knowledge of another's mental state, he may possess personal knowledge of facts from which an opinion regarding mental state may be drawn. The [factfinder] is then free to give as much or as little weight to the opinion as it sees fit." *Id.*

Here, as the italicized parts of the quote recited above illustrate, the State asked Nyagesiba to testify about his own thoughts and beliefs that were occurring when appellant held the gun to his head, not what appellant was thinking or believing at that time. Reading Nyagesiba's answers in context with the questions that preceded them, we conclude that he did not testify as to appellant's mental state but instead expressed his perception of what was going to happen when appellant threatened him. Nyagesiba's expression that he felt threatened provided evidence of an element of appellant's crime. *See* Tex.

8

Penal Code Ann. §§ 29.02(a)(2), .03(a) (West 2011). There was simply nothing speculative in Nyagesiba's testifying about his own belief, formed at the time of the crime, that appellant would shoot him. Furthermore, to the extent that Nyagesiba's answers were meant to convey an opinion on appellant's actual intent rather than only on Nyagesiba's own mindset at the time of the offense, that opinion was admissible because it was based on first-hand observations upon which the opinion could be rationally drawn.[5] *See Fairow*, 943 S.W.2d at 899.

Thus, we hold that the trial court did not abuse its discretion by overruling appellant's objection, and we overrule his second issue. *See id.*; *see also Davis v. State*, 313 S.W.3d 317, 349 (Tex. Crim. App. 2010) ("As a general rule, observations that do not require significant expertise to interpret and which are not based on scientific theory can be admitted as lay opinions."), *cert. denied*, 132 S. Ct. 122 (2011); *Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002) ("[T]he witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations."); *McKinney v. State*, 59 S.W.3d 304, 311–12 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding that a victim of a crime could testify about his own belief regarding

---

[5]We disagree with appellant's contention that Nyagesiba's testimony was "not based on any facts or observations." Before giving the testimony quoted above, Nyagesiba had testified that appellant directed him to drive to the back of an apartment complex, pulled out a gun, and placed it against Nyagesiba's head while demanding Nyagesiba's possessions.

the defendant's intent because the victim "witnessed the event upon which his testimony was based" and therefore possessed personal knowledge of the facts from which the opinion was drawn), *cert. denied*, 536 U.S. 968 (2002).

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgments.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  November 27, 2013

10